# CASES ARGUED AND DECIDED

— IN THE —

# SUPREME COURT OF MISSISSIPPI,

— AT THE —

## OCTOBER TERM, 1902.

STATE, EX REL., ABRAHAM KIERSKEY *v.* ROBERT M. KELLY.

1. CONSTITUTIONAL LAW. *Constitution of 1890, Sec. 245. Municipal elections. Electors. Additional qualifications. Ward. Code 1892, § 3028*

   The statute, Code 1892, § 3028, in so far as it requires voters at municipal elections to vote in the wards of their residence, is constitutional and warranted by constitution of 1890, sec. 245, empowering the legislature to impose qualifications, additional to those provided in said constitution, secs. 241, 242, on municipal electors.

2. SAME.

   But said section of the code (Code 1892, § 3028) is violative of the constitution of 1890, secs. 241, 242, which relate to municipal as well as state and county elections, in so far as it seeks to add as a qualification to the right to register and vote in a municipal election that the elector shall reside for one year in the municipality before he offers to register.

FROM the circuit court of Warren county.

HON. FRANK E. LARKIN, Judge.

The state, suing on the relation of Kierskey, appellant, was plaintiff in the court below; Kelly, appellee, was defendant there. The suit was a *quo warranto* proceeding to determine which of the parties had been elected to the office of city assessor

of Vicksburg. The case was once before in the supreme court, and the former decision is reported, *Kelly* v. *State, ex rel., Kierskey,* 79 Miss., 168. After the case had been remanded on the former appeal, it was again tried in the court below, resulting in a judgment in favor of defendant, Kelly, from which Kierskey appealed to the supreme court, and Kelly prosecuted a cross-appeal. A motion was made in the supreme court to dismiss Kierskey's appeal. See *Kelly* v. *Kierskey,* 80 Miss., 803. The court below allowed a number of ballots to be counted for the appellee which were cast by electors who had been residents of the city less than one year before they were registered as voters, and disallowed several which had been cast for appellant by persons who voted in wards other than the one of their residence. From a judgment in defendant's favor the plaintiff appealed to the supreme court.

*McLaurin, Armistead & Brien, J. D. Thames, Henry & Scudder,* and *Alexander & Alexander,* for appellant.

The question is sharply presented whether residence in the city for one year was necessary before registration in the city. How the learned judge explained away the plain requirements of § 3028 of the code, we wholly fail to comprehend. He was led through the ingenuity of adroit counsel to hold that this statutory requirement is unconstitutional. By what process of reasoning or of sophistry this view can be reached, we have never yet been able to understand. It may be an obliquity in our mental vision, and when we have seen the brief or heard the argument for appellee, we may see it differently, but now it seems too plain for disputation that under secs. 241, 242, and 245 it was within legislative power to make residence for such a period a qualification for municipal suffrage. It seems that the court below was persuaded that because under sec. 242 of the constitution the name of a city or town not wholly in one election district may be substituted in the oath for the election district, and because under sec. 241 one year's residence

in the election district, or in the incorporated city or town, is sufficient, therefore it was not competent for the legislature to prescribe the qualification for municipal suffrage to add to these qualifications. The all-sufficient answer to this is that secs. 241 and 242 deal only with qualification for suffrage in the state and county. They do not seek to regulate municipal suffrage, and the only connection they have with municipal suffrage is because sec. 245 makes it one of the several requisites for municipal suffrage that the person shall have all the qualifications prescribed in the constitution. But sec. 245 provides that the person shall have also "such additional qualifications as may be provided by law." The obvious and only reason for the clause in sec. 242 allowing the name of the city to be substituted in the oath for county and state registration is that many cities are so large that they embrace several voting precincts, and the voting precincts for county and state elections are not always the same as the voting places for city elections. Cities and towns may be divided into several wards for the election of aldermen, and these wards are created by the board of aldermen and are subject to be changed by them; and, in fact, are being changed from time to time to meet the growth of the town or parts of it, or to suit the character of the population. On the other hand, voting precincts in county elections are fixed by the board of supervisors, and while the precincts fixed by them coincide with those fixed by the aldermen, yet they do not always coincide. Country precincts are easily designated. They have names by which every one knows them. It is not so with town precincts, except where they coincide with the wards. It has been true in Jackson for many years that persons in the north ward vote in county elections in one of the city wards, and in city elections in another. The constitution was adopted with full knowledge of the fact that towns and cities are divided into wards which can be changed at any time, and it was, of course, intended that when the board of supervisors had fixed a precinct in a city a change of ward line would not effect the

right of the voter, so long as he still was within the county precinct.

It is nowhere provided in the constitution, nor intimated, that registration for county suffrage shall be sufficient as registration for municipal elections, or that a separate registration on totally different conditions could not be superseded by the legislature. It is as competent to require residence for a year in a city before registration in the city as it is to require city taxes to be paid. In view of the shifting and ignorant population of our cities, it is a wise provision. It is in cities that votes are colonized, not in country precincts. The provision is mainly aimed at the shifting and thriftless population and is intended to prevent their moving into a town or city and immediately registering. It was wisely thought that after residence in a city for a year a person could honestly make the necessary oath for municipal suffrage and assume the duties of a municipal elector.

The fact that sec. 242 permits the person to swear that he will be twenty-one years old before the next election, and the fact that sec. 251 provides that "no person who in respect of age and residence would become entitled to vote within the said four months, shall be excluded from registration on account of his want of qualification at the time of registration" cannot have the effect to render § 3028 of the code unconstitutional. It may be true that one may register for a county or state election and vote, provided he becomes of age, or his period of residence becomes sufficient before the next ensuing election, but § 3028, which was enacted pursuant to sec. 245 of the constitution, prescribes as one of the additional qualifications that the person shall have resided in the city for a year before he offers to register. It is not before he offers to vote, but residence is a qualification for registration. Section 3029, which deals with city registrations, provides that the oath shall be conformed to the provisions of the last section. There is no provision that the constitutional provision as to registration for state elections shall

be applicable to registrations in the city. It cannot be said that the constitutional provisions are applicable *mutatis mutandis.* It is true the registrar shall comply with the provisions of law applicable to county registration, *when not otherwise provided,* but the plain provisions of §§ 3028 and 3029 exclude the thought that the legislature used the words, "offer to register," as synonymous with "offer to vote."

In the *Bew case,* 71 Miss., 1, it was held that registration under sec. 251 might be made at any time by one otherwise qualified as a voter. This was because the words, "any election at which they may offer to vote," were uncertain, as it could not be told when the person would offer to vote, and therefore he could register at any time and await the requisite time to offer to vote. But § 3028 substitutes for the words, "offer to vote," the words, "offer to register," and thus excludes all doubt as to the meaning of the legislature. Section 251 of the constitution was ambiguous, but not so with § 3028, code 1892. There is no room for construction. The person must live in the city one year "before he offers to register," and he must make oath to conform to the provisions of § 3028.

It would hardly be contended that a registration void when made, and therefore based on a false oath, can afterwards be treated as made of a later date (*tunc pro nunc,* if we may coin an expression). If the conditions precedent to registration did not exist at the time of registration, the registration was necessarily void. Otherwise, a person not a resident of Mississippi could register under a false oath as to residence, and move into the state years afterwards and reside here two years and rely upon the former false or fraudulent registration.

*Catchings & Catchings, J. B. Brunini,* and *W. J. Vollar,* for appellee.

Section 3028 of the code of 1892 is one of those enumerated in § 3036 as applicable to all municipalities, and it seems from it, at first thought, beyond all question, that one must vote in

the ward of his residence. Counsel for appellant, however, will doubtless contend, as they did in the lower court, that if the requirement of § 3028, of one year's residence before registration is unconstitutional, the whole section falls to the ground, leaving no requirement that all persons shall vote in the wards of their residence.

It is a familiar principle that the courts will never declare unconstitutional any statute, or any portion of a statute, unless it be absolutely necessary, and that, on the contrary, they will always seek to uphold and maintain the constitutionality and validity of all acts and declarations of the legislature. Where a general scheme is created, all parts of which depend the one upon the other, the unconstitutionality of any portion will invalidate the whole. But "the fact that part of a statute is unconstitutional does not authorize a court to adjudge the remainder void, unless the provisions are so interpreted that one cannot operate without the other, or so related in substance as to preclude the supposition that the legislature would have passed the one without the other. The question is not whether valid or invalid portions are closely related in a particular clause or section, but whether they are essentially and inseparately connected in substance. Where the objectionable portion is distinct and complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that portion which is invalid, the former will be upheld. 6 Am. & Eng. Enc. Law (2d ed.), 1088, and cases cited; see, also, *Campbell* v. *Mississippi Union Bank,* 6 How. (Miss.), 625; *Thompson* v. *Grand Gulf Railroad Co.,* 3 How. (Miss.), 240; *Packet* v. *Keokuk,* 95 U. S., 80; *Unity* v. *Barragem,* 103 U. S. 495; *Presserv. Illinois,* 116 U. S., 252.

If § 3028 of the code of 1892 be applicable to Vicksburg, we insist that the requirements therein contained, that one must reside in a municipality one year before registering, is in direct conflict with the constitution, and is therefore void.

As will be seen by art. 12 of the constitution, on the sub-

ject of franchise, certain qualifications are prescribed by sec. 241 and by sec. 245, electors in municipal elections are required to possess all of these qualifications, together with such "additional qualifications as may be provided by law."

As sec. 241 prescribes only that the voter shall have resided in the incorporated city or town in which he offers to vote one year before voting, the legislative requirements of one year's residence before registration can only be upheld upon the theory that it is an additional qualification within the meaning of sec. 245, and this we submit is not the case.

If the legislature under the guise of prescribing an additional qualification for municipal electors can increase or exaggerate the identical qualifications prescribed by the constitution as to residence, they can do so as to age, education, taxation, and conviction of crime. Thus, they can provide that no man can vote in a city election unless he has resided in the city five years, is thirty years of age, and has paid a poll tax of $100, and can speak and read Latin and Greek, and has never been a party to any litigation, civil or criminal. It is manifest, we think, that it was never intended to give the legislature such unlimited power over the suffrage requirements of city electors.

The article on franchise is the product of more care, thought, and learning, perhaps, than any other of the constitution, and it can hardly be conceived that it was the purpose of the framers of the constitution to leave the right of suffrage as to city elections wholly within the power of the legislature.

The manifest meaning of the "additional qualifications" spoken of in sec. 245 is qualifications different from and other than those imposed by sec. 241, which may be rendered necessary by the different conditions applicable to municipalities. Thus it was manifestly desirable that the legislature should have the power to provide for the usual and customary scheme of ward representation, in the governing bodies of the cities of the state, and to do thus it was absolutely essential

that they should have the power to restrict voters in municipal elections to the wards and their residence.

So far as residence in the city before voting is concerned, the city elections occupy precisely the same situation as state elections. There is no conceivable reason why a longer residence should be required of a citizen of a city to vote in an election for city officers than in an election for county officers. The constitution makers considered carefully and fully the question as to the length of residence which should be required in a given locality, and determined that one year's residence · was sufficient, and having so determined, they left, we submit, no power in the legislature to alter their determination.

Argued orally by *C. H. Alexander,* for appellant, and by *O. W. Catchings,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The court below properly overruled relator's motion to exclude all evidence in relation to voters voting out of the wards of their residence. It was perfectly competent for the legislature to declare, as it did in § 3028 of the code of 1892, that voters should vote in the wards of their residence. Section 245 of the constitution expressly authorized it. It was "an additional qualification," not in conflict with the constitution. But it was just as clearly violative of sec. 241 and sec. 242 of the constitution for the legislature, in said § 3028, to add as a qualification to the right to vote in a municipal election, residence for one year before registering. That was · adding a qualification in direct conflict with sec. 241 and sec. 242 of the constitution, which · relate to municipal elections as well as state and county elections. One presenting himself for registration takes the oath prescribed in sec. 242, and by it answers, not that he has, at the time he takes the oath, resided one year in the city preceding the ensuing election, but that he will have so resided for one year, etc., the latter clause of sec. 242 plainly adapting the

form of oath set out therein, to so read in city registration. Section 251 of the constitution, which applies to all elections (*Bew's case,* 71 Miss., 1), plainly shows that if one applying to register, more than four months before the election, has not then resided one year in the city, but will have so resided for one year before the election, he is entitled to be registered and to vote.

On cross-appeal, we deem it necessary only to say that we think the second, seventh, eighth, tenth, twelfth, and thirteenth instructions asked by defendant, as well as the unnumbered instruction refused to defendant, all announced correct propositions of law, and should have been given.

*It follows that the judgment, both on the direct appeal and the cross-appeal, is affirmed.*